UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
KENNETH ENG,                                                :
:
                              Plaintiff,     :            14-CV-2442 (JPO)
:
                -v-                          :            ORDER
:
B3 LEGAL; CRAIG BROWN; and SHAWN             :
TREADWELL,                                   :
:
                              Defendants.    :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

This action stems from the *pro se* complaint of plaintiff Kenneth Eng ("Eng" or

"Plaintiff"),[1] who alleges that defendants B3 Legal,[2] Craig Brown, and Shawn Treadwell

(collectively, "Defendants") discriminated against him on account of his ethnicity in violation of

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*[3]  Now before

---

[1] As other courts in this district have noted, Eng "has an active litigation history," including
numerous copyright actions, a civil rights action, and other lawsuits.  *See* Order of Dismissal at
4-6, *Eng v. Creators of the Philosoraptor Website*, No. 14 Civ. 4948 (LAP) (S.D.N.Y. Sept. 16,
2014) [Dkt. No. 3].

[2] Defendants state in their papers that this business's correct name is Balint Brown & Basri LLC.
(Dkt. No. 8 ("Ptfs.' Br.") at 1.)  Construing the pleadings in Eng's favor, the Court considers the
complaint to name the party by its correct legal name.  For clarity, the Court refers to this party
as it is designated in the caption.

[3] A liberal reading of the complaint could suggest that Eng might also be able to bring claims
under the New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the
New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.*, which
both provide "private rights of action for unlawful discriminatory practices."  *Peguero-Miles v.
City Univ. of N.Y.*, No. 13 Civ. 1636 (AJN), 2014 WL 4804464, at *4 (S.D.N.Y. Sept. 25, 2014).
But Eng has previously complained of the same allegedly discriminatory conduct to the New
York State Division of Human Rights ("NYSDHR").  (*See* Dkt. No. 7 ("Ree Decl.") Ex. 1
(NYSDHR complaint); Ex. 4 (NYSDHR decision).)  Once NYSHRL and NYCHRL claims are
"brought before the NYSDHR, [they] may not be brought again as a plenary action in another
court." *York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002).  Thus, Eng

1

the Court is Defendants' motion to dismiss the complaint for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6).[4]  For the reasons that follow, the motion is granted;

however, Plaintiff is granted leave to amend his complaint, to permit him an opportunity to

correct its legal shortcomings.

## I.      Background

Kenneth Eng, proceeding *pro se*, alleges in his complaint that on September 13, 2013, he

was subject to harassment at the offices of B3 Legal.  (Dkt. No. 1 ("Compl.") at 3.)  The factual

allegations of the complaint consist in large part of a typewritten paragraph reading as follows:

> On Friday, September 13, 2013, Craig Brown made the following
> remark: "The Japanese think they are the kings of Asia."  His
> employees, especially Shawn Treadwell, seemed to delight in this
> racist remark.  Five minutes later, Mr. Brown asked me into his
> office and asked me if I knew any Asian languages.  He listed
> Asian languages—Chinese, Japanese, Korean.  This leads me to
> think that he did not know the difference betwee[n] different Asian
> ethnicities.  Furthermore, I was the only Asian employee at that
> office.

(*Id.*)  Below the typed text are two handwritten sentences: "In addition, C2 Staffing was about to

put me on their payroll, but sent me a check instead after I complained.  This qualifies as

retaliation."  (*Id.*)  Eng claims that he suffered psychological harm and requests $5 million in

damages from Brown and $7 million from Treadwell.  (*Id.* at 4.)

Eng also attaches several e-mail messages to his complaint, from which it can be

gathered that Eng's reference to "C2 Staffing" appears to indicate a company known as C2

---

cannot assert NYSHRL or NYCHRL claims about which he has previously filed a complaint
with the NYSDHR.

[4] Eng has also submitted a letter in which he asked the Court to redact his address in the cases
that he has filed.  (Dkt. No. 10.)  However, "[a] party seeking the sealing of court documents . . .
must overcome a strong presumption in favor of public access to judicial records," which Eng
has not overcome in this case.  *See* Order at 4, *Eng v. Creators of the Website ImpishIdea*, No. 14
Civ. 4852 (LAP) (S.D.N.Y. Aug. 15, 2014) [Dkt. No. 5].

Staffing Solutions.  (*Id.* at 5.)  It seems from the attached documents that Eng may have been assigned by C2 Staffing to work temporarily at B3 Legal.  (*See id.* at 7.)  In an e-mail dated September 24, 2013, Eng told Karen Gallagher, apparently an employee of C2 Staffing, that he had encountered ethnicity-based discrimination during his assignment at B3 Legal, and stated that Craig Brown made the same comments that are set out in his complaint in this action.  (*See id.* at 3, 6.)  Eng's e-mail to Gallagher asserts that he was "[c]urrently . . . filing a complaint with the EEOC and other agencies" on the basis of these statements.  (*Id.* at 6.)

Eng filed this action on April 7, 2014, claiming discrimination on the basis of his ethnicity in violation of Title VII.  (*Id.* at 1-2.)  Defendants moved to dismiss on June 20, 2014. Eng did not oppose the motion within the time permitted.  In an order dated September 15, 2014, the Court allowed Eng until October 1 to file an opposition.  Because Eng still has not submitted opposition papers, Defendants' motion is deemed unopposed.

## II.    Discussion

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court will not consider mere conclusory allegations that lack a factual basis. *Hayden v. Paterson*, 594 F.3d 150, 160-61 (2d Cir. 2010) (internal citations omitted).

In assessing the sufficiency of the complaint, a court may consider "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations and internal quotation marks omitted). "Integral" documents are those "either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (brackets and internal quotation marks omitted).

The Court is mindful that "the pleadings of a *pro se* plaintiff must be read liberally and should be interpreted to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (internal quotation marks omitted).

### A.    Title VII

Title VII prohibits employers[5] from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Eng's complaint appears to

---

[5] An "employer" for purposes of Title VII is a business that "has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). The Court notes that Eng's complaint's allegations do not claim that any of the Defendants meet this definition of "employer."

assert that the conduct that he described during his assignment at B3 Legal constitutes

discrimination in violation of Title VII by the named defendants.

### 1.     Individual Defendants

As an initial matter, Eng's complaint fails to state a Title VII claim against individual

defendants Brown and Treadwell.  Title VII "does not create liability in individual supervisors

and co-workers who are not the plaintiffs' actual employers." *Raspardo v. Carlone*, Nos. 12-

1686-cv, 12-1870-cv, --- F.3d ---, 2014 WL 4958157, at *12 (2d Cir. Oct. 6, 2014) (citing

*Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010)).  Eng's allegations do not suggest that

either Brown or Treadwell was his actual employer at the time described in the complaint and

thus has not stated a cognizable Title VII claim against them.  Accordingly, the claims against

Brown and Treadwell are dismissed.

### 2.     Hostile Work Environment

Eng has not alleged that B3 Legal took an adverse employment action against him.  An

employer may nonetheless violate Title VII if it permits the existence of a hostile work

environment.  "To establish a claim for hostile work environment, a Plaintiff must establish that

(1) she is a member of a protected class; (2) she suffered unwelcome harassment; (3) she was

harassed because of her membership in a protected class; and (4) the harassment was sufficiently

severe or pervasive to alter the conditions of employment and create an abusive work

environment." *Peguero-Miles v. City Univ. of N.Y.*, No. 13 Civ. 1636 (AJN), 2014 WL 4804464,

at *8 (S.D.N.Y. Sept. 25, 2014) (emphasis and internal quotation marks omitted).  While a

plaintiff does not need to establish a prima facie case at the pleading stage, "the elements of the

prima facie case still provide an outline of what is necessary to render a plaintiff's claims for

relief plausible, and so courts consider these elements in determining whether there is sufficient

factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim

and the grounds on which it rests." *Id.* at *3 (brackets, alterations, and internal quotation marks omitted).

A hostile work environment exists when a workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (internal quotation marks omitted). "[O]ffhand comments[] and isolated incidents (unless extremely serious)" are insufficient; rather, the "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The "mere utterance of an epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (ellipsis and internal quotation marks omitted); *see also Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000) ("Usually, a single isolated instance of harassment will not suffice to establish a hostile work environment unless it was extraordinarily severe." (internal quotation marks omitted)). "The incidents of allegedly offensive conduct must . . . be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001).

The scant allegations of the complaint do not meet this standard. Eng's claim of discrimination stems from two interactions with Craig Brown. First, Brown allegedly said that "The Japanese think they are the kings of Asia." (Compl. at 4.) Eng complains that Treadwell, one of Brown's employees, "seemed to delight in this racist remark." (*Id.*) Second, Brown asked Eng to come into Brown's office shortly thereafter and asked Eng if he knew Asian languages, including Chinese, Japanese, and Korean, which led Eng "to think that [Brown] did not know the difference betwee[n] different Asian ethnicities." (*Id.*) Eng also says that he is the

6

only Asian employee "at that office" (*id.*), which the Court construes to mean the office of B3 Legal.

Assuming the truth of Eng's allegations, the statements set out in the complaint constitute isolated, offhand comments that do not create a work environment that would be considered hostile by a reasonable person. *See Harris*, 510 U.S. at 21 ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."). Eng's complaint does not adequately plead that he suffered from an objectively hostile work environment.

### 3.    Retaliation

Under Title VII's antiretaliation provision, an employer may not discriminate against an employee "for opposing any practice made unlawful by Title VII." *Riviera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014); *see* 42 U.S.C. § 2000e-3(a). A prima facie case of retaliation requires the plaintiff to demonstrate "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). "[A] plaintiff alleging retaliation under Title VII does not need to make out a *prima facie* case in order to survive a motion to dismiss under Rule 12(b)(6)," but "must nonetheless allege facts that state a plausible retaliation claim." *Brodt v. City of New York*, No. 13 Civ. 3272 (PKC), --- F. Supp. 2d ---, 2014 WL 896740, at *7 (S.D.N.Y. Mar. 6, 2014) (internal quotation marks omitted).

According to the complaint, Eng was retaliated against by C2 Staffing for protesting the discrimination he allegedly suffered at B3 Legal. Of course, while C2 Staffing and B3 Legal appear to be separate legal entities, the complaint (construed liberally) may intend to assert that

7

C2 Staffing and B3 Legal should be considered a "joint employer."  While an employment discrimination action usually "may be maintained only against a plaintiff's direct employer," under the joint employer doctrine "liability may be found when separate legal entities have chosen to handle certain aspects of their employer-employee relationships jointly."  *St. Jean v. Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301, 307 (S.D.N.Y. 2013).  "Where this doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005).  "The joint employer doctrine has been applied to temporary employment or staffing agencies and their client entities." *Lima v. Addeco*, 634 F. Supp. 2d 394, 400 (S.D.N.Y. 2009), *aff'd*, 375 F. App'x 54 (2d Cir. 2010) (summary order).  However, "[e]ven where two companies are deemed a joint employer, . . . it is not necessarily the case that both are liable for discriminatory conduct in violation of Title VII" if the plaintiff does not show "that the joint employer knew or should have known" of the conduct relevant to the discrimination claim.  *Id.* at 400 (internal quotation marks omitted).

Eng asserts in his complaint that C2 Staffing "was about to put me on their payroll, but sent me a check instead after I complained," which "qualifies as retaliation."  (Compl. at 4.)  It is unclear whether Eng's allegations refer to his complaint by e-mail to Karen Gallagher at C2 Staffing, the complaints he said he was filing with "the EEOC and other agencies," or both.  (*See id.* at 3, 6.)  Further, Eng's allegation of retaliation states only that C2 Staffing—an entity that is not a party to this lawsuit—declined to put him on its payroll (or, broadly read, perhaps B3 Legal's payroll) after he made a discrimination complaint.  There is no assertion that B3 Legal,

Brown, or Treadwell—which, unlike C2 Staffing, are defendants in this case—knew of any of Eng's complaints regarding the conduct alleged.

Without further clarification of the relationship among Eng, B3 Legal, and C2 Staffing, and without any assertion that B3 Legal knew of Eng's complaint regarding discrimination, B3 Legal cannot be held liable for retaliatory employment action allegedly taken by third party C2 Staffing. Eng must explain why B3 Legal can properly be held liable for the actions of C2 Staffing in order for his retaliation claim to survive dismissal.

### B.      Leave to Amend

Generally, a *pro se* litigant's complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). The Court grants Eng leave to file an amended complaint by November 15, 2014, to permit him to correct the legal deficiencies noted above. If Plaintiff fails to file an amended complaint in the allotted time, the case will be dismissed.

### III.    Conclusion

For the reasons stated above, it is hereby ordered that:

Defendants' motion to dismiss is GRANTED. However, Plaintiff is granted leave to file an amended complaint, to be submitted to the *Pro Se* Office of this Court by November 15, 2014. An Employment Discrimination Complaint form is attached to this order.

The Clerk of Court is directed to terminate the motion at docket number 6.

SO ORDERED.

Dated: October 14, 2014
New York, New York

_____
J. PAUL OETKEN
United States District Judge

COPY MAILED TO PRO SE PARTY

10